A90A0910, A90A0917. COMMERCIAL BANK & TRUST COMPANY OF TROUP COUNTY v. ANDERSON et al.; and vice versa.
(399 SE2d 751)

CARLEY, Chief Judge.

The facts, insofar as they are relevant, are as follows: Commercial Bank & Trust Company of Troup County (the Bank) brought suit on a guaranty agreement against Ray Anderson, Edward Goodwin, and Tad Moore (the Guarantors). The Bank sought to recover $94,553.15 in unpaid principal and interest, attorney's fees and costs of collection. Answers were filed and two of the Guarantors, Anderson and Goodwin, filed counterclaims against the Bank. The counterclaims alleged that the guaranty agreement had been negligently prepared by the Bank's agent. After discovery, the Bank moved for summary judgment. The trial court held that the Guarantors were liable on the guaranty agreement but that, under the terms of that agreement, the Bank was limited to a pro tanto one-third recovery from each. The trial court further found that genuine issues of material fact remained with regard to the Bank's recovery of the costs of collection. On the counterclaims, the trial court granted summary judgment in favor of the Bank. In Case No. A90A0910, the Bank appeals from the trial

court's order and in Case No. A90A0917, Anderson and Goodwin cross-appeal.

### Case No. A90A0910

1. The Bank enumerates as error the holding that, under the terms of the guaranty agreement, it is limited to a pro tanto one-third recovery from each Guarantor.

Under the guaranty agreement, the Guarantor "unconditionally guarantee[d] the full and prompt payment when due" of a $600,000 promissory note. However, section 3 of the guaranty agreement further provided that "the right of recovery against [each Guarantor] is . . . limited to Two Hundred Thousand Dollars ($200,000.00) of the principal amount of the liabilities *plus* the interest on such amount and *plus* the expenses as applicable thereto and as applicable to this guaranty and the additions to tax as defined in Section 9 hereof." (Emphasis supplied.) Section 9 provided that, *"[i]n addition to any other obligations* of [the Guarantors] under this guaranty, upon the occurrence of a determination of taxability. . ., [each Guarantor] shall pay to the Bank . . . up to one-third (⅓) of any additions to tax payable by the Bank and any other holder of the Note." (Emphasis supplied.) The trial court held that these two provisions must be construed together and that, when this is done, the intent was to limit the Bank to a pro tanto one-third recovery from each Guarantor.

The above-quoted language of the guaranty agreement is clear and unambiguous. Under Paragraph 3, the Bank's right of recovery against each Guarantor is limited to $200,000 of the $600,000 "principal amount of the liabilities" *plus* certain other enumerated elements, including up to one-third of the "additions to tax" as otherwise defined in Section 9. Thus, nothing in the provisions purports to limit the Bank to a one-third recovery from each Guarantor, except insofar as its ultimate recovery from each Guarantor cannot *exceed* one-third of the "principal amount of the liabilities" plus certain other elements, including one-third of the "additions to tax." See generally *Friedland v. C & S South DeKalb Bank*, 135 Ga. App. 591, 593 (6) (218 SE2d 302) (1975). The clear and unambiguous language of the provisions is not subject to the interpretation that the Bank was limited to a pro tanto one-third recovery from each Guarantor and the trial court erred in holding otherwise. "Where the language employed by parties to a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction of the contract is required to ascertain the intention of the parties. [Cit.]" *South Atlanta Assoc. v. Strelzik*, 192 Ga. App. 574, 575 (1) (385 SE2d 439) (1989).

2. The trial court's denial of the Bank's motion for summary judgment as to its recovery of $3,466.28 as the "costs of collection" is

enumerated as error. In support of its motion the Bank submitted the affidavit of one of its officers who averred that $3,466.28 was the total amount of expenses that the Bank had incurred in collecting the indebtedness, exclusive of attorney's fees, but who did not otherwise indicate what specific expenses were included in that claimed amount. The trial court denied the bank's motion on the ground that there was "no evidence of what the expenses were."

We note at the outset that there is some question whether, as a general principle of Georgia law, attorney's fees and "costs of collection" are deemed to be synonymous or independent terms and whether, therefore, the Bank can recover any amount of the "costs of collection" as a separate and distinct element from attorney's fees.

There is neither controlling nor persuasive authority for the legal proposition that the terms are generally deemed to be independent rather than synonymous. *Ray v. Pease*, 97 Ga. 618 (25 SE 360) (1895) merely holds that *attorney's fees* incurred in resisting the debtor's efforts to enjoin the creditor's suit on the note are recoverable. Thus, *Ray* clearly "dealt with recovery of attorney's fees rather than other costs of collection." *Tobler v. Yoder & Frey Auctioneers*, 462 FSupp. 788, 795 (S.D. Ga. 1978). *Tobler* itself is not only a non-binding federal decision, it is not even persuasive authority for the legal proposition that the terms are generally deemed to be independent rather than synonymous. *Tobler* addresses *only* the recoverability of the "costs of collection" as *specifically authorized under former OCGA § 44-14-2 (a)* and does *not* recognize the *general recoverability* of the "costs of collection" as a separate and distinct element from attorney's fees in any and all suits on a note or guaranty which may happen to contain a provision mentioning both. Likewise, OCGA § 11-3-106 (1) (e) merely provides that the *existence* of a provision whereby the debtor agrees to pay both the "costs of collection" and attorney's fees in the event of default will not otherwise serve to render a note *non-negotiable.* Nothing in that statute has any direct bearing on the entirely separate issue of the *extent* to which such a provision is otherwise properly construable as imposing a *liability* upon the defaulting debtor.

There is, however, persuasive authority which does directly address the issue and which holds that the two terms are generally deemed to be synonymous rather than independent. "In our opinion, the terms 'cost of collection' and 'attorney's fees' . . . mean *one and the same thing, and the use of both of them imposes no other or greater burden upon the maker of the notes than would the use of either of them alone. . . .* 'In a strict legal sense "collection fees" might be a broader term than "attorney's fees," for "collection fees" might embody expenses involved in endeavoring to collect said note by some person other than a licensed attorney and so this might be

true of "costs of collection"; however, the courts, in determining the meaning of these stipulations, so far as we have been able to ascertain, have all treated them as *synonymous terms* when used in promissory notes and holding that it was a provision or stipulation to reimburse the payee and his assignees for an *attorney's fee.*'" (Emphasis supplied.) *Wood v. Ferguson*, 230 P 592, 594 (1) (Mont. 1924).

However, there is ultimately no need to resolve the *legal* issue of whether attorney's fees and the "costs of collection" are synonymous and can be recovered independently in the instant case. Even assuming that the terms are not synonymous and that the Bank is otherwise entitled to collect both attorney's fees and the "costs of collection," the trial court's ruling was nevertheless correct because the Bank made no *factual* showing to authorize the grant of its motion for summary judgment seeking $3,466.28 as the amount of the recoverable "costs of collection."

The mere fact that the bank may have incurred $3,466.28 in "expenses" does not, in and of itself, demonstrate that that amount is necessarily *legally* recoverable as the "costs of collection." As the trial court correctly held, there is no evidence as to *what* expenses are included in the $3,466.28 figure and the affidavit constitutes no more than the unsubstantiated conclusion of the affiant that that specific amount represents the "costs of collection" that may otherwise be legally recoverable by the Bank. All or a portion of the $3,466.28 may represent *non-legal* expenses, such as a charge for the administrative time expended by employees of the Bank in attempting to "collect" the indebtedness before the matter was turned over to an attorney. Such non-legal expenses certainly would *not* be recoverable pursuant to a contractual provision regarding reimbursement for the "costs of collection," but would constitute *only* a non-recoverable element of the administrative overhead of the creditor. If such administrative expenses were recoverable as the "costs of collection" in a suit to recover on a note or other contract, there would be no limit on the types and amounts of expenses that could be claimed and the recoverable "costs of collection" could easily exceed the amount of the unpaid indebtedness even though the amount of recoverable attorney's fees is otherwise statutorily limited to a percentage of the unpaid indebtedness by OCGA § 13-1-11. *No* court in this state has ever approved the recovery of *non-legal* expenses as the "costs of collection." See *Whitaker v. Trust Co. of Columbus*, 167 Ga. App. 360, 362 (2) (306 SE2d 329) (1983), wherein the creditor's affidavit showed that, pursuant to former OCGA § 44-14-2 (a), it had "incurred total *costs of litigation*" in a specified amount. (Emphasis supplied.) *Tobler v. Yoder & Frey Auctioneers*, supra at 798 (14), holding that, pursuant to former OCGA § 44-14-2 (a), the phrase "'all costs of collection including 15% attorney's fees' means expense incurred in employing an

attorney to collect the indebtedness due on the note, or, as in this case, *cost of litigation* in which the mortgagee has to take part . . . to protect his security interest." (Emphasis supplied.)

It is immaterial that no effort was made by the Guarantors to determine what "expenses" were included in the $3,466.28 that the Bank was claiming as the recoverable "costs of collection." The instant case was before the trial court on a motion for summary judgment. Compare *Tobler v. Yoder & Frey Auctioneers*, supra. Accordingly, there was *no* burden whatsoever in the Guarantors unless and until the Bank met its initial burden of showing that no genuine issue of material fact remained as to its recovery of $3,466.28 as the "costs of collection." The affidavit submitted in support of the Bank's motion did not in any way support or otherwise indicate that some or all of the $3,466.28 represented legal expenses rather than non-legal expenses. Compare *Whitaker v. Trust Co. of Columbus*, supra, wherein the creditor's motion for summary judgment *was* supported by attached documents and records. There is no dispute that the Bank's affiant has personal knowledge of the expenditure of $3,466.28. Compare *Griffin v. Citizens Bank of Ashburn*, 177 Ga. App. 771 (341 SE2d 298) (1986); *Thomasson v. Trust Co. Bank*, 149 Ga. App. 556 (254 SE2d 881) (1979). However, in the absence of *some* evidence adduced by the Bank as to what expenses were included in the $3,466.28 that it was claiming, the burden never shifted to the Guarantors to demonstrate that some or all of the $3,466.28 may not have been legally recoverable as to the "costs of collection."

Accordingly, the trial court correctly denied the Bank's motion for summary judgment seeking the specific amount of $3,466.28 as the recoverable "costs of collection."

### Case No. A90A0917

3. In related enumerations of error, Anderson and Goodwin urge that genuine issues of material fact remain as to their liability to the Bank on the guaranty agreement and as to the Bank's liability to them on their counterclaims.

The specific contention is that, under the evidence of record, it is for the jury to determine whether a confidential attorney-client relationship existed between themselves and the Bank's agent who drafted the guaranty agreement. However, our review of the record demonstrates that no such jury issue remains and that the trial court did, therefore, correctly grant the Bank's motion for summary judgment both as to Anderson's and Goodwin's liability on the guaranty agreement and as to its liability on their counterclaim. See generally *Guillebeau v. Jenkins*, 182 Ga. App. 225, 229 (1) (355 SE2d 453) (1987).

4. The remaining enumerations of error have been considered and found to be without merit.

*Judgment in Case No. A90A0910 affirmed in part and reversed in part. Judgment in Case No. A90A0917 affirmed. Deen, P. J., McMurray, P. J., Birdsong, Pope and Cooper, JJ., concur. Beasley, J., concurs in judgment only. Banke, P. J., and Sognier, J., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent. Two issues are raised in Division 2 of the majority opinion: the legal issue whether costs of collection, other than attorney fees, are recoverable; and the factual issue whether the Bank was required to produce a sworn statement itemizing those costs in order to recover them. After an extensive discussion of the legal issue, the majority renders that language obiter dicta by pretermitting the entire legal issue and resolving the appeal on the factual basis that the Bank's affidavit was insufficient. As a result, while the parties to this appeal now know an itemized affidavit is required, they have no idea what costs they need to prove or indeed if those costs can be recovered once proved. As it now stands, the Bank does not know whether or not filing an affidavit itemizing non-attorney fee costs is a futile gesture, and the trial court has no guidance on how to rule upon the Bank's claim for costs of collection once the itemized affidavit is before it. Rather than place upon these parties the expensive and time consuming burden of appealing this matter once again to this court (assuming that the losing party considers it financially worthwhile to appeal a matter involving only $3,466.28), in the interest of judicial economy this court should resolve the legal issue now, and I dissent as to the majority's failure to do so.

(1) On the legal issue, I would hold that costs of collection are not synonymous with attorney fees and are recoverable as separate and distinct expenditures incurred by the Bank. While there is a dearth of Georgia law on the precise subject of costs of collection, the appellate reporters are filled with opinions asserting the basic rule that contracts must be interpreted "so as to give a reasonable, lawful and effective meaning to all manifestations of intention by the parties rather than an interpretation which leaves a part of such manifestations unreasonable or of no effect. [Cits.]" *Central Ga. &c. Corp. v. Ga. Power Co.*, 217 Ga. 171, 173 (121 SE2d 644) (1961). I find that rule applies here and mandates that we hold that costs of collection other than attorney fees are recoverable.

In the case sub judice, the guarantors contracted to pay "all expenses paid or incurred by Bank in endeavoring to collect the liabilities or any part thereof from [QC], including attorney's fees, of fifteen per cent (15%) of the total amount sought to be collected if the Bank endeavors to collect from the Debtor by law or through an attorney at

law." To construe this language as providing that the Bank could recover only attorney fees would not only render superfluous most of the language of this provision, it would also require actively ignoring the "*including* attorney's fees" language. This court is obligated, when construing contracts, to favor the construction which gives meaning and effect to *all* of the terms of the contract over the construction which nullifies or renders meaningless a part of the language therein. See *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744 (2) (149 SE2d 511) (1966). Rather than nullify the above language in the contract executed by the parties to this appeal by construing it, as the majority hints it would, as referring solely to attorney fees, I would hold that the above provision encompasses non-attorney fee expenses incurred by the Bank. (Such costs of collection would, of course, be subject to a challenge on the ground that the expenses were unreasonable or were not incurred. *Rattray v. Banks*, 31 Ga. App. 589, 590 (121 SE 516) (1923).) Accordingly, I cannot agree with the majority that a 1924 Montana case is persuasive authority for rendering meaningless the contractual language employed by parties in the case at bar.

(2) On the factual issue, I would hold that the Bank carried its burden of showing that there is no genuine issue as to any material fact on its claim for costs of collection. Because the cost of an item is a matter of fact, unlike the value of an item, which is a matter of opinion, see, e.g., *Soni v. Coppedge*, 159 Ga. App. 889 (285 SE2d 604) (1981), cost can be proved on motion for summary judgment by the averments made on personal knowledge by a competent affiant. OCGA § 9-11-56 (e). In the case at bar, the Bank carried this burden by submitting the affidavit of its vice president, Lamar Loftin, who averred that he had personal knowledge of the costs incurred by the Bank in collecting the indebtedness and that excluding attorney fees that amount was $3,466.28. Because Loftin possesses personal knowledge of the amounts incurred, I cannot agree with the majority that his averment is a "unsubstantiated conclusion" merely because he totalled those amounts instead of detailing each individual expense of which he had knowledge.

The majority does not deny that Loftin had personal knowledge of the non-attorney fee costs the Bank incurred. It cannot be denied that Loftin expressly averred that attorney fees were excluded from the claimed amount of costs. Unlike the situation in cases such as *Thomasson v. Trust Co. Bank*, 149 Ga. App. 556 (254 SE2d 881) (1979) and *Griffin v. Citizens Bank of Ashburn*, 177 Ga. App. 771 (341 SE2d 298) (1986), the guarantors introduced no opposing affidavits to challenge the affiant's statements that he had personal knowledge of a specific amount so as to raise any issue involving the requirements of OCGA § 24-3-14 as to business records. See *Whitaker*

*v. Trust Co. of Columbus*, 167 Ga. App. 360, 361-362 (1), (2) (306 SE2d 329) (1983), in which we upheld the grant of the bank's motion for summary judgment which, though supported by documents *not* admissible at trial because they were not identified by clerk of the court as custodian, see OCGA § 24-5-31, was nonetheless proper because of the bank president's averment of personal knowledge in his affidavit.

Despite all this, the majority finds the affidavit insufficient based on its supposition that Loftin's figure as to the costs of collection incurred by the Bank may have included certain non-legal expenses which the Bank could not recover. I have two problems with this. First, the majority cites no authority for its position that on motion for summary judgment this court can reject an uncontroverted affidavit, which contains absolutely nothing from which any reasonable inference can be drawn that improper amounts were included in the claimed costs, merely because that affidavit does not affirmatively negate the possibility that non-recoverable costs were included. The Bank has introduced documents showing it was contractually entitled to recover costs of collection upon the debtor's default, it has adduced evidence that default has occurred, and it has produced a sworn statement that $3,466.28 is the amount of costs it incurred. I cannot agree with the majority that the Bank's affidavit must be presumed incorrect or that the Bank, in the absence of any inferences in the record or any challenges to the Bank's averments, must carry the burden of coming forward with evidence to prove every conceivable negative. See generally *Baldwin County Hosp. Auth. v. Coney*, 188 Ga. App. 339, 340-341 (1) (373 SE2d 252) (1988).

More importantly, however, the majority bases its holding on its concern that Loftin possibly included in the total figure such items "as a charge for the administrative time expended by employees of the Bank," which the majority holds "would *not* be recoverable pursuant to [the costs of collection provisions contracted for by the parties to this appeal] but would constitute only a *non-recoverable* element of the administrative overhead." (Original emphasis deleted; emphasis supplied.) The majority's objection to the Bank's recovery of such hypothetical expenses is not based on the legal construction to be given the contractual language here. Instead, the majority indicates that these "non-legal expenses" are not recoverable because such amounts "could easily exceed the amount of the unpaid indebtedness." Since the indebtedness in this case exceeds the claimed costs of collection by over $90,000, it is apparent that the majority's objection to the Bank's recovery of these costs is based on some unexpressed public policy consideration. It is well established that parties in the State of Georgia are free to contract on any terms and about any subject matter in which they have an interest unless prohibited

by statute or public policy. *Brown v. Five Points Parking Center*, 121 Ga. App. 819, 821 (1) (b) (175 SE2d 901) (1970). There is no statute prohibiting parties from contracting for non-attorney fee collection costs or limiting the amount recoverable by some percentage amount, as is the case with attorney fees. OCGA § 13-1-11. By declaring that the parties to this contract cannot have contracted for the Bank to recover administrative overhead expenditures incurred in collecting an indebtedness, the majority is sub silentio impairing these parties' right to contract. Since I do not find the majority is exercising the "extreme caution" required before declaring a contractual provision void as against public policy, see *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981), quite aside from the fact that it does not appear that this case falls into that category of cases that are " 'free from doubt and where an injury to the *public* interest clearly appears' " (emphasis supplied), *Phenix Ins. Co. v. Clay*, 101 Ga. 331, 332 (28 SE 853) (1897), so as to justify voiding the provision as violative of public policy, see *Brown*, supra at 821 (1) (b), I cannot agree with the majority that the non-itemized costs incurred by the Bank here may include items not recoverable under the contract.

Therefore, because the Bank established its entitlement to the claimed expenses and because the guarantors failed to carry their burden by challenging the reasonableness of the expenses by controverting the Bank's affidavit or by otherwise adducing facts to create a genuine issue of material fact for jury consideration, I would reverse the trial court's denial of the Bank's motion for summary judgment as to those expenses.

I am authorized to state that Presiding Judge Banke joins in this dissent.

DECIDED DECEMBER 5, 1990.

*Daniel, Hadden & Meadors, A. E. Daniel III*, for appellant.
*H. J. Thomas, Jr., Willis, McKenzie & Long, D. Ray McKenzie*, for appellees.